ELIZABETH D. WEST, Administratrix, &c., v. W. D. GIBBS, Administrator, &c.

1. PROBATE COURT : JURISDICTION, EXERCISE OF.—When the jurisdiction of the Probate Court has attached to a case, with all the parties in interest *before* it, and the subject-matter properly cognizable by it, the court should so exercise its powers as to settle all questions in controversy, if practicable, and not force litigants to other tribunals for remedies, when their rights are clearly apparent.    Courts should endeavor to discourage litigation and circuity of action, by making their judgments and decrees as comprehensive and conclusive as the facts and law of the case will warrant.

2. SAME: CASE IN JUDGMENT. —Q. D. Gibbs and Elizabeth D. West qualified as administrator and administratrix of the estate of James R. West, deceased; pending the administration, Q. D. Gibbs died. Washington D. Gibbs, his administrator, filed an account in the Probate Court of Yazoo county for the final settlement of the administration of Q. D. Gibbs; this account showed a large balance to his credit. Exceptions were filed to various items in the account; some were sustained, others overruled; the final account was restated by a commissioner under direction of the court, showing a balance of $35,313.68 due the administrator. The proof showed a large outstanding debt against the administrator in favor of factors, for money and supplies to carry on the farm of the estate, and that this debt was substantially the same as one of the vouchers excepted to, and that it had been paid by the surviving administratrix after the death of Q. D. Gibbs. *Held*— That the Probate Court should have sustained the exception to this item, and charged the administrator with the amount thereof; that it was unnecessary and improper to force the distributees to another court to secure their rights.

ERROR to the Probate Court of Yazoo county. Hon. R. B. Mayes, judge.

On the 28th of November, 1865, Washington D. Gibbs filed in the Probate Court of Yazoo county the final account of Q. D. Gibbs as administrator of the estate of James R. West, deceased, said Q. D. Gibbs having died pending his administration. This account was made up by Washington D. Gibbs from the annual account and other papers on file; the account was sworn to by

the administrator, W. D. Gibbs, and showed a balance to the credit of Q. D. Gibbs, of $35,313.68. Accompanying this account was a petition asking for its examination and allowance by the court, also for commissions to the administrator, and concluding with a prayer for a decree for the balance appearing to be due. .

To the account numerous exceptions were filed, some by the distributees of James R. West, deceased, and others by Mrs. Elizabeth D. West, administratrix. Exceptions were likewise filed to the several annual accounts of Q. D. Gibbs, administrator. On the trial, the whole file of the administration papers seem to have been in evidence, beside deposition and other proofs; in all making up a most voluminous record.

There are three annual accounts, and the final account. They, in connection with the vouchers, petitions, orders of the court, and other papers, show that the intestate died in possession of a large real and personal estate, and indebted to his commission merchants, Cuddy, Brown & Co., of New Orleans, in the sum of $35,313.68; that the administrator and administratrix kept the property together, and carried on the planting business for the estate, under orders of the Probate Court; that the cotton raised was shipped to New Orleans for sale, principally, if not entirely, to the firm of Rotchford, Brown & Co., who succeeded to the business of Cuddy, Brown & Co.; that the debt due the latter firm at the death of intestate was transferred to the books of the former, as was the case with all the customers of the old firm; that R., B. & Co. made to Q. D. Gibbs, the administrator, such advances in money and supplies as were necessary to carry on the farm, and also to pay off debts due by intestate, as well as those incurred in the planting business. .

On the trial, the court sustained a portion of the exceptions and overruled others, and referred the several annual accounts, with the final account, to the clerk, to re-state the same in accordance with instructions then given. The clerk made his report to the court, accompanied by the accounts re-stated, showing a balance to the credit of Q. D. Gibbs, administrator, of $35,795.60. On the coming in of this report and the accounts, Elizabeth D. West, administratrix of James R. West, deceased, and the dis-

tributees of said decedent, as assignees of the account of Rotchford, Brown & Co. against West's estate, made a motion to have said account applied as a credit in the decree in favor of Q. D. Gibbs, administrator.    This motion the court overruled, and entered a decree in favor of Q. D. Gibbs, for $35,795.60, confirming and ratifying his administration; and further decreed that Washington D. Gibbs, administrator of Q. D. Gibbs, recover said sum from the surviving administratrix, and the heirs and distributees of James R. West, deceased, and that execution issue therefor, to be levied off the goods, chattels, lands, and tenements of said James R. West, deceased, in the hands of said administratrix or heirs and distributees.

*Wilkinson & Bowman* for plaintiffs in error.

The ground relied on by plaintiff in error for a reversal of the decree of the court below is the allowance to Gibbs, administrator of West, deceased, in his accounts, of the item of $35,795.60, as so much money paid by him in discharge of the claim of Cuddy, Brown & Co. against the estate of said West. *Contended* — That the record showed that Gibbs died insolvent; that in his lifetime he had no income beyond what was necessary for his support, and had no means of his own, with which to pay off so large a debt.    Counsel referred to the petition of W. D. Gibbs for final settlement, showing that Q. D. Gibbs was obliged to procure from his merchants in New Orleans large advances, in money and supplies, to carry on the plantation; also referred to the petition of Q. D. Gibbs, administrator, and the orders of the Probate Court granted thereon, showing the same thing, and to the deposition of Brown (a partner in the firm of Cuddy, Brown & Co., and Rotchford, Brown & Co.), showing that the account of C., B. & Co. against James R. West, deceased, was not paid, but only transferred to the books of R., B. & Co.; lastly, to the memorandum in the handwriting of Q. D. Gibbs, in his last settlement made in his lifetime, in which he states: That in the event of his death, the balance due him (Gibbs) in the Probate Court should be paid to R., B. & Co., and charged to him (Gibbs).    *Contended* — That the Probate

Court should have charged the administrator in his final account with the amount of C., B. & Co.'s debt and interest; that it was admitted that the account of R., B. & Co. (which is in reality the same account, being made up in part of the account of C., B. & Co.) is now held by the distributees of James R. West, by purchase; but it is contended that the account was bought at a discount, and paid for with the proceeds of cotton raised on West's plantation: the question is, whether the estate of Gibbs or West shall be profited by the purchase. There is a decree in favor of Gibbs against West's administratrix and distributees for $38,000, to be levied off their goods, chattels, lands, &c.; and it is sought to turn them around to litigate with an insolvent estate for the claim of Rotchford, Brown & Co., which they have purchased, or at least that they be sent to a court of equity, to be subrogated to the rights of R., B. & Co., as creditors against Gibbs. The jurisdiction of the Probate Court is ample: it should correct Gibbs's final account by striking out the item of Cuddy, Brown & Co.'s account, or by charging the administrator with the full amount of the Rotchford, Brown & Co. debt and interest.

*W. & J. R. Yerger*, for defendant in error, contended: That the record showed that Q. D. Gibbs had properly administered the estate of West, had regularly filed his annual accounts during his lifetime, accounting for all receipts and showing legal vouchers for all disbursements; that the account of Cuddy, Brown & Co. against his intestate had been paid and receipted, and was a legal voucher to Gibbs for that amount; that the decree of the court below was correct, and should be affirmed; that if, in fact, the claim of Rotchford, Brown & Co., in the hands of West's distributees, was a valid claim against the estate of Q. D. Gibbs, deceased, *their* remedy was at law, and not in the Probate Court; that a creditor of an administrator cannot sue him in the Probate Court. If they can establish their claim at law against estate of Q. D. Gibbs, deceased, and an execution prove fruitless, then they could subject in equity the debt which West's estate owes Gibbs.

SHACKELFORD, C.J., delivered the opinion of the court.

On the 28th of November, 1865, Washington D. Gibbs, administrator of the estate of Q. D. Gibbs, deceased, who was the administrator at the time of his decease (with Elizabeth D. West, administratrix) of the estate of J. R. West, deceased, filed his petition in the Probate Court of Yazoo county, alleging that the estate of J. R. West, deceased, was indebted to his intestate, Q. D. Gibbs, as administrator, in a large sum of money. Petitioner filed with his petition an account prepared by him from "the receipts and disbursements" in the papers of the deceased administrator, Q. D. Gibbs, and from the last annual accounts filed and allowed, of. said administrator, Q. D. Gibbs, of the estate of J. R. West, deceased.

This account of Washington D. Gibbs showed a balance due Q. D. Gibbs, as administrator of said estate, of $69,309.14. To this account various exceptions were taken by the plaintiff in error, some of which were allowed by the court; and a reference of this account was made to M. A. Jenkins, as a special commissioner, to re-state and report an account from the vouchers filed with W. D. Gibbs's account, under direction from the court. The re-stated account by Jenkins was filed at the January Term, 1867.

Exceptions were taken to this account on account of an allowance by the commissioner to the deceased administrator of the account of Cuddy, Brown, & Co., for the sum of $35,795.60, as a charge against the estate of J. R. West, deceased.

Which account of Cuddy, Brown, & Co., plaintiffs in error contended, was never paid to Cuddy, Brown, & Co. by Q. D. Gibbs, as administrator of J. R. West, deceased; therefore not a legal voucher for said deceased administrator. The exception to the allowance of this item was not sustained by the court.

And to the allowance of this item of $35,795.60, plaintiffs in error excepted to the opinion and judgment of the court.

At the same term of the court a final decree was rendered against the estate of J. R. West, deceased, upon the re-stated account by M. A. Jenkins, for the sum of $37,356.09, in which

execution was ordered to be issued against the estate of J. R. West, deceased, in the hands of plaintiff in error.

Before the rendition of the final decree in the case by the court, a motion was made by plaintiff in error to have the amount declared to be due the estate of Q. D. Gibbs, as administrator, credited with the account of Rotchford, Brown, & Co., against the estate of J. R. West, deceased, partly created by West in his lifetime, and Q. D. Gibbs, as administrator of the estate of West, showing that the account of Rotchford, Brown & Co. against said estate had been purchased by the plaintiff in error since the death of Q. D. Gibbs; this account amounted to $51,169.82 on the 1st day of September, 1865.

This motion was overruled by the court, and exceptions taken by plaintiff in error to the ruling of the court in refusing to sustain the motion; exceptions were also taken to the action of the court in rendering the final decree against plaintiff in error, and hence the case is here for revisal, by writ of error.

There are two assignments of error: —

"1st. Because the court below erred in overruling the exceptions to the account of Cuddy, Brown, & Co., charged in the administration account against estate of James R. West for $35,795.60, when the same had not been paid."

"2d. Because the court below erred in overruling the motion of distributees to have that account set off against amount due Gibbs on final settlement."

The testimony relied upon by plaintiff in error in support of these assignments, and embodied in the Bill of Exceptions, is voluminous. We shall only notice such portions of it immediately bearing upon the questions presented by these assignments.

James R. West deceased (upon whose estate Q. D. Gibbs administered) in the year 1856, and was indebted at the time of his decease to the commercial firm of Cuddy, Brown & Co., of the city of New Orleans, on the first day of December, A.D. 1856, in the sum of $29,986.40, which account was regularly probated and allowed on the 22d of January, A.D. 1858, against said estate.

Interest was calculated upon this account up to the 29th day of March, 1859, increasing the balance due thereby to $35,795.60.

This last account of *29th March* amounted to $35,795.60, interest up to that date, and was also sworn to by Shepherd Brown of said firm of Cuddy, Brown & Co., on the *7th day of April*, 1859, who says, "that the annexed account against J. R. West is just and true, and that *no part has been 'paid*, or any security or satisfaction for the same has been received: the sum of $35,795.60 is justly due."

There is a receipt apparently attached to this last probated account in these words:—

"Received from administrator of J. R. West, amount of this account, thirty-five thousand seven hundred and ninety-seven $\frac{60}{100}$ dollars, by shipment of cotton.

"Cuddy, Brown & Co., in Liquidation."

This receipt has no date, but it is charged up against the estate of J. R. West by the administrator, Q. D. Gibbs, on the 24th day of March, 1859, *fourteen days before it was sworn to by Shepherd Brown.*

The account current of Rotchford, Brown & Co., rendered to administrator, Q. D. Gibbs, on the 24th March, A.D. 1859, against the estate of J. R. West, showed a balance due them on that day of $41,821.21, after allowing credits for all the cotton *previously* shipped to the house of Rotchford, Brown & Co., by the administrator, Q. D. Gibbs, from the plantation of the late J. R. West, during the years 1857 and 1858, cultivated by the administrator and administratrix, by order of the Probate Court of Yazoo county.

This large balance against the estate of West is accounted for by the transfer of the account of Cuddy, Brown & Co., on the 16th of February, 1859, to the books of Rotchford, Brown & Co.

The amount of the sales of cotton shipped to Rotchford, Brown & Co., by the administrator, Q. D. Gibbs, before that

time, is credited to the estate; these are the same account sales which Q. D. Gibbs charges himself in his second annual account, appearing in the record:

In the *second* annual account of Q. D. Gibbs he charges the estate of West, with the $35,795.60, showing a balance due him of $42,424.82. At that time the estate owed Rotchford, Brown & Co. $41,821.21, after they had *deducted the credits on account of the sales of cotton amounting to* $27,155.23.

The whole amount of debits in the said account of Rotchford, Brown & Co., at that time, amounted to the sum of $68,976.44, and the credits $27,155.23, leaving the said balance due them of $41,821.21.

It will be seen that the indebtedness of the estate of West is not diminished, but increased by the advances of the house to the administrator, Q. D. Gibbs.

Another account of Rotchford, Brown & Co., against this estate, was rendered, showing a balance due them on the 20th of October, 1860, of $49,443.39; also an account dated the 29th of April, 1861, due Rotchford, Brown & Co., in proof, showing a balance due them of $34,559.70. This balance was increased to $51,169.82, by interest account up to 1st April, 1865, when the same was assigned to the plaintiff in error by Rotchford, Brown & Co.

This last account was proven to be correct by the testimony of Shepherd Brown, and Samuel Rany, one of the late clerks of Rotchford, Brown & Co.

The deposition of Shepherd Brown, one of the members of the late firms of Cuddy, Brown & Co., and Rotchford, Brown & Co., is in substance — That the firm of Cuddy, Brown & Co. commenced business in the year 1855, and it expired in 1857, and was succeeded by the firm of Rotchford, Brown & Co., of which firms he was a member. That, at the time of the death of James R. West, he was doing business with the house of Cuddy, Brown & Co.; he knew of no agreement between West and said firm, except a deed in trust, executed by him and wife, dated the 24th April, 1855, to secure said firm

of Cuddy, Brown & Co. a large amount due them, and to become due by the terms of said deed.

The said business was continued by the said administrator, Q. D. Gibbs, and E. D. West, administratrix, after the death of James R. West.

The indebtedness of the estate of J. R. West to Cuddy, Brown & Co., amounting to $35,795.60, was transferred to the account of the estate with Rotchford, Brown & Co., as was done with all the accounts of planters due the house of Cuddy, Brown & Co.

All the cotton ever received from Q. D. Gibbs, administrator, was sold, and proceeds thereof credited to the said estate, as shown in the accounts current of Rotchford, Brown & Co. The receipt upon the probated account was signed by Shepherd Brown, "in liquidation," as one of the survivors of Cuddy, Brown & Co. The body of the receipt was not written by witness, but by James N. Nevin. "*It was not settled as therein stated.* At the time of probating said account and receipt, *the same* was an *item* of the account of Rotchford, Brown & Co. against the estate of James R. West, to which firm it had been transferred *long* before the *date* of probating the same and receipt."

"As far as witness can recollect, the receipt was given to Q. D. Gibbs, administrator of said estate, to enable him to have the account examined and allowed in the Probate Court as a debt of the estate. The receipt was not necessary to effect a transfer of the account to the books of Rotchford, Brown & Co., but upon Rotchford, Brown & Co. receiving the account upon their books, Cuddy, Brown & Co. *no longer had an interest therein,* and ceased to be creditors of said estate, all rights being vested in Rotchford, Brown & Co. The receipt was *so worded* in order to enable Q. D. Gibbs, the administrator, to have the account examined and allowed as aforesaid. *Gibbs desired the receipt to be so rendered for reasons of his own.*"

All the cotton was received by Rotchford, Brown & Co., and credited to the account against the estate in Rotchford, Brown & Co.'s books; an *item* of which account was the "*probated*

account of Cuddy, Brown & Co.  *None* of the proceeds of the cotton *was applied solely to the payment of Cuddy, Brown & Co.'s account*, but as a *general* credit to the estate on Rotchford, Brown & Co.'s books."

The accounts of Rotchford, Brown & Co. show fully all the cotton *ever* received from Q. D. Gibbs, administrator, when the same was sold, and for what amount.  All their transactions with the administrator, Q. D. Gibbs, are fully set out in detail.  The *only payments ever made* are those credited in the several accounts of Rotchford, Brown & Co., *arising* from the sales of cotton, which were applied to the *general* account, and not to said claim against the estate, in favor of Cuddy, Brown & Co. specially.

It is evident from the testimony of Shepherd Brown, that the account of Cuddy, Brown & Co. against said estate was never paid by Q. D. Gibbs, as administrator or otherwise.

The only proof in the record tending to show that he did pay it, is the receipt filed by him, appearing on the account of the 24th of March, 1859.

It will be borne in mind this receipt is charged up against the estate of J. R. West on the 24*th day of March*, 1859; when the second probated account of Cuddy, Brown & Co. was sworn to by Shepherd Brown *on the* (7) *seventh day of April, A.D.* 1859, *fourteen days after the account* seems to have been paid by Q. D. Gibbs.

On the same day, 24th March, 1859, Rotchford, Brown & Co.'s account current rendered the administrator, Q. D. Gibbs showed that the estate of West was still owing Rotchford, Brown & Co. $41,821.21 on this account; all the *credits* which appear as *debits* against himself, in the *second annual* account of Q. D. Gibbs, as administrator of said estate, *being the sales* of *cotton raised on the plantation of West*, amounting to the sum of $27,155.23.

This account of Rotchford, Brown & Co., of the 24th of March, 1859, has the account due Cuddy, Brown & Co., by the estate of J. R. West, deceased, carried into it, and charged up against the estate.

How does the administrator, Q. D. Gibbs, pay this debt of Cuddy, Brown & Co. against the estate of West? Whose cotton did he ship to pay it with?

The receipt does not say. The administrator, Q. D. Gibbs, does not show whose cotton was shipped to pay this account. If it had been any other cotton than the cotton of the estate, raised by him and Mr. West, he would have shown it. The only pretext the administrator, Q. D. Gibbs, could have had in charging the estate with this sum of $35,795.60, as having been paid by him to Cuddy, Brown & Co., was upon the hypothesis that there had been sufficient cotton shipped by him, as administrator, to the house of Rotchford, Brown & Co., to pay off the probated account. He must have known that if the account of sales of cotton had been applied to the "general" account of Rotchford, Brown & Co. against the estate of West, that the account due Cuddy, Brown & Co. was still unpaid. This account of Rotchford, Brown & Co. showed large payments made upon the drafts of the administrator, and supplies furnished the plantation of West.

Suppose this account or debt of the estate with Cuddy, Brown & Co. had been paid as stated, it undoubtedly was paid by the funds of the estate of West, and not by him individually. There is not a particle of proof in the cause showing that Q. D. Gibbs had any other cotton to pay this debt with.

It was in proof that he had only the means arising from his profession, as an attorney-at-law, sufficient for the support of his family, and that he was not a cotton planter.

The accounts current, set out in the record and proven to be correct, show that the proceeds of the cotton shipped by Q. D. Gibbs was *credited* and applied *generally* to the account of Rotchford, Brown & Co., with the estate of West, created and kept up by the administrator, Q. D. Gibbs. Looking at the *second* annual account of Q. D. Gibbs, we perceive a number of charges against the estate, which will be shown to have been paid by Rotchford, Brown & Co. They overgo the amount of credits to the estate, or debits to himself. If he did not pay these amounts, the sales of the cotton being applied to them,

the balance in his favor would have been nominal, or he would have been in debt. By the insertion of this large debt as a payment, he produces a heavy balance, which is carried to his *third* annual account; then a balance appears to be due him of $49,323$\frac{8}{100}$, 1st March, 1860.

Attached to this account is this explanatory note : —

"*Explanatory Note.* — I charge myself with all the cotton sold up to date of this settlement. I credit myself with so much of proceeds as is charged to Mrs. West, being amount of drafts drawn by her, interest and commissions on same. The estate owes me the balance per account. *I owe the merchants' balance,* except commissions on my *own drafts, which, by previous order of the court,* the estate is to pay. *I am to settle with them as I am credited here.*

"In further explanation, I would state that *so much of the balance of my account* as may be necessary to pay the items of the account of the commission merchants to the extent of *credits* in this account *paid by them,* and eight per cent interest in the event of my death, *should be paid them and* charged to me.

"If I complete the administration, the sales of cotton will liquidate their account, be charged to me, and thus discharge both accounts. Mrs. West is to pay what she has received, commissions and interest, to R., B. & Co.

"Q. D. GIBBS."

In the petition of Q. D. Gibbs, administrator, to the court, asking for an order to cultivate the plantation with the negroes of the estate, he uses this language : —

"It will be necessary to procure the means through the merchants for the estate in New Orleans, to carry on the plantation, and settle claims against the estate.

"That it would undoubtedly be to the interest of the estate to work the estate out of debt, and pay the customary charges of commission merchants. And your petitioners would state further, *that, unless means to pay debts are obtained from the*

*merchants*, and the debts discharged, the estate will be subjected to great expense and costs, upon suits which will be instituted by creditors."

The merchants for the estate at that time were Cuddy, Brown & Co., who had, as appears from the record in the case before us, a deed in trust upon 3,880 acres of land and eighty slaves, executed by J. R. West and his wife on the 24th of April, 1855, to secure a large amount of money then due them and to become due. They are secured by this deed to the extent of the balance of the property therein mentioned.

It seems the " outstanding debts " have all been paid.

Were these payments made by the administrator, Q. D. Gibbs, or by the house of Rotchford, Brown & Co.? If they were paid by the administrator, Q. D. Gibbs, how is it shown? We have no instance before us of any payments by the administrator, Q. D. Gibbs, other than the charges in his annual accounts. He states in his petition, before referred to, that these outstanding liabilities had to be settled through advances to be made by " the merchants of the estate."

In his first annual account is a note showing how the charges in that account were paid. In his third annual settlement there is an " explanatory note," which explains fully the plan of future adjustment of the balance due Rotchford, Brown & Co. for their advances to him. If all of these charges which appear as credits to the administrator, Q. D. Gibbs, in his annual accounts, were not really advances to him, for the benefit of the estate, from Rotchford, Brown & Co., why should he have made the explanation appearing in his first annual account? — and this, which appears on the third annual account: " I owe the merchants' balance, except commissions on my own drafts, which, by *previous order of the court*, the estate is to pay. I am to settle with them as I am credited here." He evidently means that the balance due Rotchford, Brown & Co. he owes, — the items that he has charged in these accounts against the estate, *as credits for him*. He is to pay them; for the word " settle," in the sense used by him, means to pay.

He further shows how this balance was to be paid, — by the sales of cotton to be raised on the plantation. He did not contemplate paying any of it out of his own funds, but expected to pay it with the cotton to be raised by the estate of West, as the debts were created for the benefit of the estate. He certainly did not intend that any court should consider supplies such as pork, bagging, rope, &c., as payments by him, and for which he should be entitled to compensation out of the estate of West. If we have misunderstood the meaning of the administrator, Q. D. Gibbs, and have given a wrong interpretation of the first part of this " explanatory note," we think we cannot be mistaken as to his meaning in the subsequent portion of it. He certainly did not consider the items of credit which were paid by Rotchford, Brown & Co. as legitimate charges *or claims* to be paid him by the estate, — although appearing in his annual accounts *as payments by him,* — and charges against the estate.

In his first annual account he shows a balance due him, *as administrator,* of $30,525.67, after crediting the estate with the sum of $1,871.95, cash received of the assets of the estate, and the proceeds of 265 bales of cotton, raised by the administrator and administratrix in the year 1857, and sold by Rotchford, Brown & Co., amounting to $13,527.74. This account was rendered on the 25th of February, 1858. This large balance was before the account of Cuddy, Brown & Co., or receipt, passed into his possession. The administrator shows how this balance of $30,525.67 was made. He endorses the following on this account: " I have charged and credited interest at eight per cent, from dates of payment to 25th of March, 1858. The *payments are made by advances by Rotchford, Brown & Co.,* and this is their interest. Commissions are not inserted in the accounts which are charged by the house." He here declares that this large amount of payments was all paid out of the funds of Rotchford, Brown & Co. Not one dollar of the $44,052.68 was paid by him out of his own funds.

This balance, apparently due the administrator, was carried to his second annual account, and so on to the end of his accounts.

The annual accounts show the amount of cotton received by him and shipped to Rotchford, Brown & Co.; these accounts current show the applications of the proceeds of the cotton. This the administrator, Q. D. Gibbs, must have known.

These accounts current of Rotchford, Brown & Co. were all in evidence before the court. The application of the proceeds of the cotton was fully shown by these accounts. Shepherd Brown's testimony shows that there was no cotton shipped by the administrator, which does not appear on these accounts. The application of the proceeds was to the "*general in-debtedness*," and not to the account of Cuddy, Brown & Co. specially.

It is manifest that the receipt of Cuddy, Brown & Co. is without consideration. The account of Cuddy, Brown & Co. is shown to be unpaid, only so far as is shown by the *general* application of all the cotton shipped to Rotchford, Brown & Co., by the administrator, to the *general* indebtedness of the estate, created by West, and his administrator, Q. D. Gibbs.

If we are correct in this view of the case, the receipt or item of $35,795.60 should have been stricken from the final account of W. D. Gibbs, as stated by the court.

This assignment of error we consider well taken, and the court erred in refusing to sustain the motion of plaintiff in error.

The proposition presented by the *second* assignment of error is resisted by the defendant in error, on the ground that the remedy of the plaintiff in error is at law, in the first place; that a suit should be instituted against the administrator, Q. D. Gibbs; and, if a judgment proved fruitless, then they could subject in equity the debt which the estate of West owes Gibbs to the payment of the debts which Gibbs owes them.

This course, insisted upon by the counsel for defendant in error, would lead to long and useless litigation. The estate of Q. D. Gibbs is shown by the record to be insolvent, consequently the whole burthen of the expense would fall upon the plaintiff in error, even if such a course were necessary by law. The Probate Court unquestionably has jurisdiction of all the

matters in controversy between the parties to the cause before us, and can settle the points at issue, without either party being under the necessity of resorting to law or equity for assistance.

The cotton produced on the plantation of West was raised through the forbearance and means of Rotchford, Brown & Co. Without the supplies furnished, the administrator and administratrix could not have worked the plantation. Rotchford, Brown & Co., by paying the debts drawn on them by the administrator, Q. D. Gibbs, in settlement of the outstanding liabilities of the estate, enabled the administrators to keep the property from being sacrificed; and, in fact, Rotchford, Brown & Co. had an undisputed legal right to apply the proceeds of the cotton so raised as they saw proper; and, as they applied the proceeds of the sales of the same to the extinguishment of the general indebtedness of the estate, created in the manner stated by the administrator, Q. D. Gibbs, and the pre-existing debt due Cuddy, Brown & Co. by J. R. West, this application of the proceeds of the cotton cannot be disturbed under the circumstances. The administrator, Q. D. Gibbs, could not have forced an application of the proceeds to the account of Cuddy, Brown & Co., if he had so desired, for the obvious reason, that this cotton was not assets of the estate, existing at the death of his intestate.

The item of $35,795.40, "account of Cuddy, Brown & Co.," being stricken from the annual accounts of the administrator, Q. D. Gibbs, the proceeds of the cotton which he charges himself as having received will pay off and discharge the indebtedness he has charged the estate of West with, arising from the liquidation of the outstanding debts of the deceased, J. R. West, paid through his drafts on Rotchford, Brown & Co. The items for supplies are void charges, and must be rejected. We have carefully examined the accounts in proof of the administrator, Q. D. Gibbs, and W. D. Gibbs, as well as the accounts of Rotchford, Brown & Co., and find the items of charges against the estate (credits to the administrator) identical as to amount, and payees, or drawees (in some instances there are variances as to dates, arising from the date of the drafts and the times of

payment), with the items of charges in the accounts of Rotchford, Brown & Co. We have seen that, in the first annual account of the administrator, Q. D. Gibbs, the administrator *declares that all the credits to him in that account were advances made by Rotchford, Brown & Co.* In his second annual account he says nothing relative to the credits. In this account the large items of the alleged payment to Cuddy, Brown & Co. appears. With this account, and the other items, he shows that items of debits amounted to $91,067.69. Credits off, for cost received of assets of the estate, and cotton sold by Rotchford, Brown & Co., all amounting to $44,535.67, was taken off, leaving a balance due administrator, Q. D. G., of $46,531.72.

This large balance was carried to his third annual account, which, with the items of credit in that account, sums up the whole amount to $73,890.84, and the debits off of $24,556.10, cash received, and for sales of cotton, leave a balance due administrator of $49,323.66.

On this third annual account, it will be recollected, his " explanatory note " appears.

These notes have reference, undoubtedly, to all the " credits " he has claimed from the beginning of his administration of the estate up to the settlement of his third annual account. If our view of their meaning and application be correct, it follows that he had not paid anything out of his personal funds, for the estate, up to the time of settlement of his third annual account. It is manifest from the explanations made by the administrator, that he intended no wrong upon the estate of J. R. West, by crediting himself with the advances of Rotchford, Brown & Co.

This seeming injustice all originated by the manner he kept his accounts, — by not charging himself with any advance of Rotchford, Brown & Co., and crediting himself with the same amount paid to a creditor of the estate. If this had been done, he would have shown the disposition of every dollar received as advances from Rotchford, Brown & Co.; his receipts and payments would have always balanced.

Then his account, after charging himself with the cotton sold by Rotchford, Brown & Co., and credited to him by them, would have shown the balance due Rotchford, Brown & Co. on account of their advances, less their commissions and interest on these advances.

All that would be left to him to show was the disposition of the money he received from the assets of the estate, which he has charged himself with. If he paid the money out he received from the assets of the estate, the account would have been balanced. The administrator, Q. D. Gibbs, having failed, as we have shown, to pay out of his personal funds anything for three years of his administration of the estate, it is hardly presumable that in the last year of his administration he would pay any money out of his funds, when it is shown by the proof in the cause that he received a large advance from the State of Mississippi, upon cotton of the estate, which he has failed to account for.

The court, in the instructions to the commissioner, Jenkins, ordered that all the items charged as debits to the estate, for advances made by Rotchford, Brown & Co. in the nature of plantation supplies, should be stricken out from the final account. The court should have gone further, and ordered him to bring over all such items appearing in the four annual accounts of Q. D. Gibbs. We do not see how these charges for supplies are more objectionable than the charges against the estate for money advances by Rotchford, Brown & Co. Every item of debit, growing out of advances from Rotchford, Brown & Co., the court should have ordered the commissioner to disallow. The court having failed to do this, the commissioner was bound to adopt the last balance shown by the administrator, Q. D. Gibbs, as true; and upon that balance, and the illegal vouchers charged to the estate, being the advances of Rotchford, Brown & Co., he stated the final account upon which the final decree in question has rendered.

Consequently the decree in question is without substance, and a nullity, the commissioner having treated *quasi pay-*

*ments* as real, in the construction of the account upon which the decree was based.

Under this view of the decree, we consider it unnecessary to give any opinion upon the question of set-off raised in the second assignment of error.

Let the decree be reversed, and cause remanded for further proceedings in accordance with this opinion.